Harry HOROWITZ and Abraham Schneiderman, Plaintiffs,

v.

Nathan NEWMAN, Louis Newman, and Morris D. Newman, co-partners, doing business under the trade name and style of Premier Products Co., Defendants.

Civ. A. No. 16552.

United States District Court
E. D. New York.
Aug. 4, 1959.

Mock & Blum, New York City, for plaintiffs. Alex Friedman and Charles Temko, New York City, of counsel.

Harry Price, New York City, for defendants.

BYERS, Chief Judge.

This cause for patent infringement involves a one-claim patent No. 2,737,942 for toy guns, issued March 13, 1956 on application filed May 11, 1953.

The defendants' alleged infringing structure is similar to that of the plaintiffs as marketed, in all apparent respects, to such an extent that many of the parts are interchangeable as to dimensions and apparent configuration; that fact however does not solve the question of infringement, since the plaintiffs' commercial structure differs from the device as described in the patent and the patent drawings.

The issue as to infringement turns upon the question of whether the patent is broad enough in its disclosure to comprehend the altered or revised version of the device as to which invention was claimed, to sustain the plaintiffs' cause.

It will be convenient to discuss that question at the outset, because validity turns upon too narrow an expedient adopted at the eleventh hour to avoid rejection, to provide a satisfactory basis for adjudication, unless the issue of infringement is indeed left in doubt.

The patented device was intended to provide in the form of a toy, a repeating carbine or gun, which should simulate as far as possible a military weapon, but devised solely for the amusement of children. Instead of firing a loaded cartridge, it was designed to discharge or expel from the barrel a succession of harmless pellets.

The latter emerge as the result of the exertion of energy residing in a series of coiled springs, the successive action of which would result in the expulsion of the pellets in simulation of the discharge of an actual weapon. Since this was the desired result, it was deemed necessary to provide what appeared to be such a weapon, which functioned through the operation of what the plaintiffs call a bolt, and the defendants call a slide, whereby pellets emerging in turn from a magazine were thereby ejected as the result of pulling a trigger; the repeater operation supplied a new pellet after the first had been fired, until the clip of six had been exhausted; then a new clip was inserted in the magazine, and the process repeated.

Since in an actual weapon the discharge of the bullet is accomplished by the explosion of gases in the cartridge, it will be obvious that the substitution of the energy of a coil spring to secure the expulsion of the pellets in rapid succes-

sion, introduced a departure from the mechanical operation of an actual weapon.

The simulation in the toy for that which takes place in the firing of the latter, involved the presence of the bolt in the plaintiffs' device, for that is what it is called in this type of actual fire-arm. Thus the plaintiffs characterized the element which struck the blow upon the top pellet as presented in the path of the bolt (see Fig. 3, Exhibit 1).

The part of the bolt that so operated can be seen in the drawing of the patent as the front end of the bolt 43, and as a result of the striking, the pellet emerged from barrel 16. It will be observed that the bolt is impelled forward by the action of its own coil spring 46, the pressure of which is released as the result of the disengagement of a triangular element of the bolt's lower surface (unnumbered) with the top of a leaf spring of which the trigger mechanism is a part. The mechanical details of this step in the process are shown in Fig. 3 and Fig. 4.

The disengagement is the result of an ingenious operation of the leaf spring in response to pressure upon the trigger; that pressure causes the leaf spring to let go the bolt as the result of a cam action at the top of the leaf spring.

For convenience, the claim will now be recited in tabulated sentences to indicate the sequence of action, and the several parts played by the various elements as recited:

A toy gun construction comprising

(a) a gun-shaped casing,

(b) a bolt longitudinally slidable in said casing and spring biased to a forward position,

(c) a trigger-engaging projection depending from said bolt,

(d) said bolt serving to propel a pellet from said casing upon its spring being depressed and released,

(e) said casing having opposing trigger-engaging guideways lying under said bolt, .

(f) a one-piece molded trigger element having an elongated substantially flat body portion with side edges longitudinally slidable along said guideways and spring biased to a forward position,

(g) an integral pull finger depending from said body portion,

(h) an integral post extending upwardly from the top of said body portion,

(i) an integral flat deflectable leaf spring-like finger extending forwardly from said post over the flat body portion, said deflectable finger being biased upwardly,

(j) an integral upstanding latch projection engaging the bolt projection when in its forward position,

(k) a cam projection integrally formed on the spring finger adjacent the latch projection,

(l) means on the casing engageable with said cam as the trigger is pulled to deflect the spring finger and disengage its projection from the bolt projection,

(m) whereby to release the bolt so as to propel the pellet from the gun.

It will be seen that the foregoing comprise three elements:

*Casing*, letters a, e, *l* and m.

*Bolt*, letters b, c, d and m.

*Trigger*, letters c, f, g, h, i, j and k.

For present purposes, the exact make-up of the casing structure, and the physical elements of the trigger construction and its method of operation are not important, though interesting in the mechanical sense. The end result is as stated in (m) having to do with the disengagement from the bolt projection when the trigger has been pulled (*l*), thus:

"whereby to release the bolt so as to propel the pellet from the gun."

This means that the bolt becomes the agency of propulsion, in response to the energy imparted to it by the release of its coiled spring 46 (Figs. 3 and 4).

The question for decision is whether the offending device is embodied in a structure which is taught by this patent.

The exposition of the plaintiffs' patent at the trial was lacking in clarity, and consisted in the testimony of one of the patentees who used for demonstration one or more models of the commercial embodiment of his patent with frequent references to what is done by "this" and "that" without adequate demonstration, and without a theoretical explanation such as would be needed to expose to an untutored person, the actual workings of each element in a complicated mechanical assembly.

The plaintiffs' commercial device is said to be adequately depicted in a series of drawings filed with the final brief, illustrating in six figures, the adaptation upon which plaintiffs relie to sustain their cause. They were not the subject of testimony and bear numerals which frequently do not correspond to those of the patent drawings.

It will be seen that the magazine has now been moved from the position shown in Figs. 2 and 3 of Exhibit 1, so as to occupy in vertical position, part of the handle of the toy pistol. Each top pellet is propelled out of the barrel through the functioning of a new element which has been introduced at the rear end of the casing called a driver. It is indicated by the figure 18, and is caused to move rearwardly by pressure upon the trigger which is transmitted through spring 9.

The office of the driver is described on pages 7, 8 and 9 of the plaintiffs' said brief and will not be here repeated. The rearward movement causes the driver to tension its own spring 26, as the brief states it. That is a new spring which rises vertically as shown in these drawings, between the hammer (also new) and the rear end of the driver. The tension on that spring is thus described:

"In the position shown on Figure 3, the lowermost projections 29 of the driver 18 have engaged cam surfaces 30 (seen in Figure 3), and continued movement, as shown on Figure 3, causes the driver 18 to be cammed out of engagement with the notch 25, wherein the spring 26

moves the driver forward to expel the pellet, as seen in Figure 4. At this point, the projection 4 is still engaged by the notch 13, and the remaining part of the bolt or slide 2 has not commenced its forward movement."

It should be said that the reference to the projection 4 and the notch 13 have to do with the engagement between the leaf spring of the trigger element and the triangular projection from the bolt, referred to in subd. (c) of the tabulated statement of the claim set forth above.

The plaintiffs argue that this construction (which is sufficiently like the defendants to render discussion presently unnecessary) is essentially an embodiment of the disclosure of the patent to sustain its cause.

This court does not agree:

As has been seen, the patent teaches the transmission of energy released by the uncoiling of spring 46 (Exhibit 1) which is transmitted to the pellet as the result of the impact upon it of the unnumbered portion of the bolt.

The plaintiffs' commercial device depends for its efficacy (according to the drawings accompanying its final brief) upon the action of the driver which is caused to strike the pellet by the release of tension imparted to spring 26, by the backward thrust of the driver; that in turn is caused by the compression of the springs 3 and 9 in obedience to the rearward movement of the trigger (not to be confused with pull finger 10).

It does not alter the situation as presently understood, to argue that the driver should be deemed to be but an extension of the bolt or slide (if they are mechanically to be regarded as the same). Whether that is true or false is not decided. It is certainly not entirely true, that is, for all purposes; it may be partly true but in an unimportant sense.

The bolt in the patent transmits the energy imparted to it by coil spring 46 (Exhibit 1).

Affixing the driver to the bolt does not affect the source of the energy which

causes the expulsion of the pellet in plaintiffs' commercial product, which it has been the effort of the foregoing to demonstrate.

Spring 26 is an element, not taught by the patent, which is actuated by a new element, the hammer, and is not seen to be the mechanical equivalent of coil spring 46 which actuates bolt 43 of the patent. This was emphasized by the insertion of a pin in the driver as was done at the trial, to produce a more complete identification of the driver with the bolt.

The difference between the flat spring 26 of the plaintiffs' commercial structure, and the coil spring 46 of the patent, is not the whole story; rather the difference lies in the separate functions of the driver, and the bolt or slide in the operation of the plaintiffs' commercial structure. If the driver were omitted, the bolt would not expel the pellet. There is no similar element in the patented invention itself.

It is true that without spring 46 of the patent, the bolt would not be caused to function, but that is an integral element of the structure. The driver is a new element and its functions go beyond the initial teaching of the patent and the invention therein disclosed.

The resultant finding is that plaintiffs' commercial structure embodies that which is not comprehended in the disclosure of the patent in that the driver is a new and separate element in the combination, and not a mere alteration in the bolt element as to its form and function.

It is further found that the defendants' accused structure is so similar to the plaintiffs' commercial structure, that the reasoning upon which the latter is to be mechanically distinguished from the invention asserted in the patent in suit, applies equally to the defendants' structure.

It is further found that the accused structure manufactured and sold by the defendants does not infringe the plaintiffs' patent in suit.

Since it results from the foregoing that the defendants are entitled to a de-cree for failure of the plaintiffs to sustain their burden of proof as to infringement, it is deemed unnecessary to decide the issue of validity.

If that issue were clearly and adequately presented it might be disposed of for the sake of completeness, but the record is not deemed to be adequate to that end. The somewhat dubious expedient of granting a patent based upon the theory that an unclaimed part of the trigger mechanism called a post, which is not even given a number in the drawing, involves a patentable advance, for instance, over Sigg No. 2,770,916, requires more careful study and exposition, than the present record and advocacy provide.

### Conclusions of Law.

1. The court has jurisdiction over the parties and the subject-matter of the controversy.

2. The defendants are entitled to a decree on the merits, with costs, for failure of the plaintiffs to sustain their burden of proof that the defendants have infringed the patent in suit.

Settle decree on notice.